ATTACHMENT A

EFILE from: Schuck Law LLC\David Schuck\Muhammad Complaint.lif

11

E-FILED

05-11-2021, 15:17
Scott G. Weber, Clerk
Clark County

1

2

3    **A TRUE COPY**

4

5    By _____

6         Attorney at Law

7

8           IN THE  COURT FOR THE STATE OF WASHINGTON

9                FOR THE COUNTY OF CLARK

10   JAMAL MUHAMMAD, an individual,

11                      Plaintiff,              Case No.  21-2-00881-06

12         v.                                   COMPLAINT (Employment Claims)

13   UNIFIED NATURAL FOODS INC., a              Jury Trial Requested
     foreign corporation, dba UNFI,
14

15                      Defendant.

16         COMES NOW Plaintiff Jamal Muhammad, by and through the attorneys at Schuck

17   Law, LLC, and for his complaint against Defendant alleges as follows:

18                           I.     PARTIES

19   1.    Plaintiff Jamal Muhammad is an individual who at all times material resided in and

20   worked for Defendant in Clark County, Washington.

21   2     Defendant, Unified Natural Foods Inc. ("UNFI"), is a foreign corporation licensed and

22   authorized to do business in the State of Washington and is doing business in  Clark County.

23                          II.     JURISDICTION

24   3.    Plaintiff was employed in  Clark County, Washington and all acts complained of

25   affecting his employment and giving rise to this litigation occurred in Clark County,

26   Washington; and subject matter jurisdiction, personal jurisdiction, and venue are properly

---

Complaint - Page 1

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1  before this Court.

2  **III.    INTRODUCTION AND FACTS COMMON TO CLAIMS**

3  4.      At all material times, Defendant employed Plaintiff.

4  5.      Defendant is a large multi-state, multi-national wholesale and retail foods service

5  business that distributes various grocery items in the United States and Canada.

6  6.      Plaintiff began working for Defendant in or around August 2020.

7  7.      Plaintiff worked at Defendant's Ridgefield, WA distribution center.  Plaintiff's basic

8  duties were to load and fill pallets and move inventory in a warehouse.

9  8.      On or about December 7, 2020, Plaintiff sustained a workplace injury to his left

10 shoulder.  Plaintiff reported the injury to his supervisor and to Defendant's injury hotline, and

11 submitted a workers' compensation claim in regards to the injury.

12 9.      On or about December 8, 2020, Defendant sent Plaintiff to a doctor of Defendant's

13 choice for assessment and diagnosis of Plaintiff's injury.

14 10.      Following the injury, Plaintiff was initially restricted to little or no use of his left arm

15 at all.

16 11.      Plaintiff requested modified work but was told no modified work was available at that

17 time.  Thus, due to the injury and restrictions, Plaintiff was placed off work for about a month.

18 12.      Plaintiff remained under medical restrictions limiting the use of his left arm through

19 early January, and remained on leave from work due to his injury and restrictions.  During that

20 time, Plaintiff was also sent for further diagnostic exams of his shoulder, including an MRI.

21 13.      On or around January 4, 2021, after multiple medical exams and results of the MRI of

22 the shoulder, the doctor to whom Defendant had sent Plaintiff diagnosed him with a torn

23 labrum, a cyst that had formed along or under the tear, and tendonitis in his rotator cuff.

24 14.      Plaintiff was not at that time deemed medically stationary, and further treatment and

25 evaluation of his injury was anticipated.

26 15.      At that time, Plaintiff was unable to determine the practical extent to which his arm

Complaint - Page 2

SCHUCK LAW, LLC
208 E 25ᵗʰ Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1    was impaired because, as per his medical instructions, he had been refraining from using that

2    arm to the greatest extent possible.  Likewise, Plaintiff was unsure to what extent he might be

3    able to resume any work duties requiring reaching, lifting, or manually moving boxes in the

4    warehouse, because he had not been using his arm.  Plaintiff understood that the doctor

5    selected by Defendant also concurred that it was difficult at that time to determine the extent

6    of Plaintiff's present practical impairment while he was refraining from using his left arm.

7    16.     On or about January 7, 2021, the doctor issued Plaintiff a "status report" returning him

8    to work beginning January 8.  The status report further stated that Plaintiff would be under

9    further treatment and was not medically stationary, and that Plaintiff was scheduled for his

10    next follow-up appointment on January 20 – which was in about two weeks.

11    17.     Plaintiff provided the status report to Defendant's injury manager and to its Human

12    Resources department and returned to work on January 8.

13    18.     Upon his return to work on January 8, two of Plaintiff's supervisors directed him to

14    first see the injury manager for a lifting exercise or "lift test."  Plaintiff went to see the injury

15    manager, and informed the injury manager that his shoulder was still somewhat stiff and sore.

16    Nonetheless, the injury manager directed Plaintiff to return to work without a "lift test."

17    19.     Plaintiff returned to work and was assigned to work in the freezer section or

18    department in the warehouse.

19    20.     Very quickly, Plaintiff began experiencing pain, discomfort, and difficulty with the use

20    of his left arm in doing lifting and similar manual tasks.  His shoulder stiffened and "locked

21    up," impairing the use of his left arm and causing him pain.  He had significant difficulty

22    pulling boxes from shelves, lifting boxes, and loading pallets, which were part of the tasks he

23    was being assigned to do in the freezer section.

24    21.     On the next day of January 9, the day after he returned to work with a non-stationary

25    shoulder injury, Plaintiff told his supervisor that he was still having pain and impairment with

26    his left arm and was having difficulty using the arm.  Plaintiff and his supervisor both agreed

Complaint - Page 3

SCHUCK LAW, LLC
208 E 25ᵗʰ Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1  that Plaintiff should be reassigned to a task or department where he would not need to do

2  significant lifting, and Plaintiff also made a written request to be reassigned.  However,

3  Plaintiff was not reassigned at that time, nor at any time thereafter.

4  22.　　On the following day of January 10, two days after Plaintiff returned to work with a

5  non-stationary shoulder injury, Plaintiff was summoned to a meeting with three of

6  Defendant's supervisory personnel, including the supervisor he had spoken with the day

7  before about a reassignment.  The supervisors told Plaintiff that he was taking too long in the

8  performance of freezer-area tasks, that he was not meeting his work-task quota, and that "it

9  looks like you're not doing any work," or words to that effect.  Plaintiff again explained that

10  he was experiencing pain and difficulty with his shoulder, that he had been diagnosed with a

11  torn labrum and had just returned from injury-related leave, and that the cold freezer area

12  seemed to worsen the stiffness, immobility, and impairment of his arm.  He explained that he

13  could not work as quickly as he ordinarily did due to the pain and stiffness in his shoulder,

14  and that he had to periodically step away from the freezer area and try to "loosen" the

15  shoulder so that he could continue to try to work.  Plaintiff and Defendant's supervisors again

16  agreed that Plaintiff should be reassigned to a different task or department, and assured

17  Plaintiff that a different supervisor would meet with him the following day about

18  reassignment to operating a forklift, where he would not need to use his arm for lifting.

19  23.　　Although Plaintiff had been back at work for less than three days, was still not

20  medically stationary, and had reported his injury and his continued pain and impairment to

21  Defendant's supervisory, injury, and human resources personnel, and although Plaintiff's

22  supervisors all verbally agreed with him that he needed to be accomodated by reassignment to

23  a task that did not require him to use his arm for lifting, Plaintiff was nonetheless disciplined

24  for slow work.  However, Defendant would not and did not provide Plaintiff with a copy of

25  any written disciplinary warning.

26  24.　　To Plaintiff's knowledge, he had never before been reprimanded or disciplined for

Complaint - Page 4

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1  slow work or a failure to meet work-task quotas, and prior to his injury he had never failed to

2  meet any work-task quotas. His performance had slowed only on the two or three days since

3  he had returned to work from injury leave, and this was due to the continued pain, stiffness,

4  and impairment all caused by the workplace injury to his shoulder, just as he had informed

5  Defendant's supervisors and other personnel.

6  25.     On the following day of January 11, Plaintiff went to meet with the supervisor he had

7  been instructed to meet with about forklift duties at the previous day's meeting with three

8  other of Defendant's supervisors. That supervisor directed Plaintiff to yet another different

9  supervisor who Plaintiff did not know. Plaintiff located that supervisor and again explained

10  that, due to his workplace injury and the persistent pain and impairment in his arm, he was

11  requesting to be reassigned and trained for forklift duty as an accomodation. Plaintiff also

12  stated that his regular supervisor had indicated that he should begin working on the forklift

13  right away. However, the forklift supervisor told Plaintiff that he was not eligible for

14  reassignment because he was not meeting the work-task quotas in the freezer section and had

15  just been reprimanded for failure to meet the quotas. The forklift supervisor then told

16  Plaintiff that he would "follow up, but it might be a while," or similar words to that effect.

17  26.     After being rebuffed by the forklift supervisor and not provided with an accomodation

18  for his injury, Plaintiff again went to speak with one of his regular supervisors and again

19  requested reassignment. The supervisor again promised to find Plaintiff an alternate-duty

20  assignment and assured Plaintiff that he would contact Plaintiff on the headset radio with a

21  new assignment. In the meantime, Plaintiff was directed to return to work in the freezer

22  section, despite the fact that he had repeatedly told multiple supervisors that both the cold and

23  the lifting caused him stiffness and soreness and he was unable to perform the tasks assigned

24  in that area at his usual pace due to injury.

25  27.     Hours went by and Plaintiff was not contacted with a reassignment. His shoulder was

26  in great pain. Eventually he went looking for the supervisor who earlier that day had

Complaint - Page 5

1  promised him reassignment, but he was told by a different supervisor that that supervisor had

2  already left for the day.

3  28.     Plaintiff then also explained to that supervisor that he was supposed to be reassigned

4  to a different task set or department due to his shoulder injury, that his shoulder was hurting

5  badly, and that it was very difficult for him to work at his current assignment in the freezer

6  section.  In response, that supervisor told Plaintiff that if he left early, he would be fired.

7  29.   .  Plaintiff told the supervisor that he did not want to be fired and again requested that he

8  be given any alternate assignment to accomodate his injury.  Ultimately, the supervisor told

9  Plaintiff that since the workday was almost over anyway Plaintiff could spend the last part of

10  his shift on a task that did not require lifting; and he directed Plaintiff to line up carts at the

11  warehouse battery station for the last part of the shift, which Plaintiff did.

12  30.     The following two days of January 12 - 13 were Plaintiff's ordinary weekly days off.

13  31.     Upon returning to work on January 14 after his ordinary days off, Plaintiff was

14  immediately escorted to the warehouse "conference office" to be fired.  The supervisor who

15  fired Plaintiff told Plaintiff that he was being fired due to his low productivity.  Plaintiff again

16  protested that he had never had low productivity prior to his injury, had only been back on the

17  job for three days, was still impaired and in great pain, and had requested reassignment with

18  several other supervisors to any task or position that could accomodate him.  Nonetheless, the

19  supervisor who fired Plaintiff specifically cited Plaintiff's low productivity "on the 8th" and

20  "the whole time you've been back," which was three days.

21  32.     Defendant fired Plaintiff so swiftly that Plaintiff had not even had an opportunity to

22  attend his next medical follow-up appointment, which was less than two weeks from

23  Plaintiff's return-to-work date of January 8.

24  33.     Plaintiff complained to Defendant's injury manager that his firing was unlawful.  The

25  injury manager affirmed that Plaintiff was fired due to low productivity on the dates of

26  January 8, 9, and 10, which were the three days Plaintiff had worked since returning from his

Complaint - Page 6

1  injury-related leave and during the course of which he made multiple daily requests for

2  accomodation, as described above.

3  34.     The injury manager also told Plaintiff that, since Plaintiff was fired, he would no

4  longer be eligible for any time-loss benefits in the event that his injury prevented him from

5  working.

6  35.     Plaintiff further informed Defendant, in writing, that he had made multiple requests

7  for accomodation and had informed multiple supervisors of his continuing pain and difficulty

8  due to injury, that Defendant had unjustly accelerated its disciplinary process from a first

9  verbal warning to a termination in only three days, and that he believed his termination was

10  unlawful.  Defendant did not respond and did not take any action to redress or correct its

11  unlawful termination of Plaintiff.

12                          **IV.    CLAIMS**

13             **CLAIM ONE: VIOLATIONS OF RCW ch. 49.60**          `

14                  **Disability Discrimination / Retaliation**

15  36.     Plaintiff reasserts and incorporates by reference all paragraphs, as though fully set

16  forth herein again.

17  37.     As described herein, Plaintiff had and / or continues to have a physical impairment

18  that substantially impaired him in the use of his left arm, including but not limited to lifting,

19  pushing, pulling, and raising / lowering the arm, and which had a substantially limiting effect

20  on his ability to perform those and any other similar or related job tasks.

21  38.     Defendant had notice of the impairment because it was caused or directly related to a

22  workplace injury, because Plaintiff had a workers' compensation claim and several associated

23  medical visits of which Defendant was aware, because Plaintiff regularly communicated with

24  Defendant's personnel about the injury and its effects, and because Plaintiff communicated to

25  multiple of Defendant's supervisors that upon return to work he was experiencing pain and

26  impairment in the use of his left arm and he repeatedly requested a change or reassignment of

Complaint - Page 7

**SCHUCK LAW, LLC**
208 E 25ᵗʰ Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1    job tasks as an accomodation.

2    39.     Defendant's supervisors verbally agreed with Plaintiff that his proposed accomodation

3    was reasonable and that alternate tasks and assignments were available.

4    40.     Defendant knew of Plaintiff's disability and also perceived Plaintiff as disabled.

5    41.     Despite verbal promises to reassign Plaintiff to duties that would accomodate the

6    substantial impairment of his arm, Defendant did not reassign Plaintiff, did not provide

7    Plaintiff with any accomodation, did not propose any alternate accomodation, continued to

8    assign Plaintiff to perform tasks that Defendant knew Plaintiff was substantially limited in his

9    ability to perform due to impairment, and made no attempt to engage with Plaintiff in any

10    form of interactive dialogue, all as described herein.

11    42.     Instead of accomodating Plaintiff, Defendant fired Plaintiff within mere days of his

12    return to work.

13    43.     Defendant discriminated and retaliated against Plaintiff by refusing to provide

14    reasonable accomodation, by refusing to engage in interactive dialogue about reasonable

15    accomodation, by assigning Plaintiff to perform tasks that Defendant knew he was

16    substantially limitied in his ability to perform absent an accomodation, and by firing Plaintiff

17    due to his need for and / or request of reasonable accomodations and Defendant's own failure

18    to accomodate.

19    44.     Defendant's acts and conduct as set out herein are unlawful under, *inter alia*, RCW

20    49.60.180 and / or RCW 49.60.210.

21    45.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to

22    suffer economic damages including lost compensation and job-related benefits, in amounts to

23    be estimated when discovery is complete.

24    46.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to

25    suffer emotional distress, indignity, humiliation, and loss of enjoyment, and is entitled to

26    compensation for non-economic damages is an amount to be determined by a jury at trial.

Complaint – Page 8

**SCHUCK LAW, LLC**
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

1  47.     Plaintiff is entitled to all remedies available under RCW 49.60 and Washington law,

2  including all lost compensation, emotional distress damages, and other compensatory

3  damages; and including those incorporated by reference to Title VII, and attorney fees under

4  RCW 49.60.030; and costs of suit, and interest on all amounts pursuant to Washington law.

5  **CLAIM TWO: WRONGFUL TERMINATION / VIOLATIONS OF RCW ch. 51.48**

6  **Injured Worker Discrimination / Retaliation**

7  48.     Plaintiff reasserts and incorporates by reference all paragraphs, as though fully set

8  forth herein again.

9  49.     As set out in the statutes and regulations of the state of Washington, including but not

10  limited to RCW ch. 51.48, WAC chs. 296-15A – 296-16A, and elsewhere, Washington has

11  strong public policies prohibiting discrimination and retaliation of all forms against workers

12  who suffer workplace injuries and / or who  invoke, utilize , or exercise any rights afforded by

13  the Workers' Compensation laws or system.  This strong policy  includes but is not limited to

14  prohibiting the unlawful termination of such workers.

15  50.     As set out in the statutes and regulations of the state of Washington, including but not

16  limited to RCW ch. 51.48, WAC chs. 296-15A – 296-16A, RCW ch. 50A *and former* 49.78,

17  RCW 49.12.010, and elsewhere, Washington has strong public policies promoting worker

18  health and safety and protecting the rights of sick and / or injured employees.

19  51.     As set out in the statutes and regulations of the state of Washington, including but not

20  limited to RCW ch. 51.48, WAC chs. 296-15A – 296-16A, RCW ch. 49.60, and elsewhere,

21  Washington has strong public policies that both encourage and require accomodation of

22  disabled and / or injured workers.

23  52.     Defendant discriminated and retaliated against Plaintiff in violation of the laws,

24  regulations, and public policies of Washington by refusing to provide reasonable reassignment

25  to accomodate Plaintiff's workplace injury, and by instead firing Plaintiff for suffering a

26  workplace injury and impairment and / or for utilizing and invoking rights under the Workers'

Complaint - Page 9

SCHUCK LAW, LLC
208 E 25ᵗʰ Street • Vancouver, WA 98663
Tel (360) 566-9243 ▪ Fax (503) 575-2763

1  Compensation laws and system as a result of that injury and impairment.

2  53.    Defendant refused to accomodate Plaintiff and fired Plaintiff in order to retaliate

3  against Plaintiff and to discourage employees, including Plaintiff, from exercising rights

4  afforded by the Workers' Compensation laws and system and elsewhere as set out in the laws,

5  regulations, and public policies of the state of Washington.

6  54.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to

7  suffer economic damages including lost compensation and job-related benefits, in amounts to

8  be estimated when discovery is complete.

9  55.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to

10  suffer emotional distress, indignity, humiliation, and loss of enjoyment, and is entitled to

11  compensation for non-economic damages is an amount to be determined by a jury at trial.

12  56.    Plaintiff is entitled to all remedies available under Washington law, including all lost

13  compensation, emotional distress damages, and other compensatory damages; interest on all

14  amounts dues; and his costs and attorneys' fees.

15  ## V.    DAMAGES

16  57.    Plaintiff is entitled to all damages available to him under RCW ch. 49.60 and under

17  the common law of Washington, including all lost compensation and benefits and any other

18  economic damages in amounts to be determined after discovery, but estimated at not less than

19  $95,000.00; non-economic damages in compensation for his distress as determined by a jury

20  at trial; Title VII remedies incorporated under Washington law; and any further equitable or

21  other relief the Court deems appropriate.

22  58.    Plaintiff is entitled to damages for the tax consequences of any general damage award.

23  59.    Plaintiff is entitled to pre- and post-judgment interest on any award.

24  60.    Plaintiff is entitled to his attorneys' fees and costs pursuant to RCW chs. 49.46, 49.48,

25  49.52, 49.60, and / or 51.48.

26  ///

Complaint - Page 10

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763

## VI.   JURY DEMAND

61.   Plaintiff seeks trial by jury on all claims and all issues.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of judgment against Defendant for:

1.   Lost past and future compensation and all other appropriate available economic damages in amounts to be determined after discovery;

2.   Recompense for distress, humiliation, anxiety, inconvenience, and suffering;

3.   Any and all equitable remedies and remedies available under Title VII as incorporated under Washington law;

4.   Costs and attorney's fees;

5.   Tax consequences of any general damage award; and,

6.   Pre- and post-judgment interest.

DATED: May 11, 2021.

s/ Leslie E. Baze
LESLIE E. BAZE WSB 45781
lbaze@wageclaim.org
Attorney for Plaintiff

Complaint - Page 11

SCHUCK LAW, LLC
208 E 25th Street • Vancouver, WA 98663
Tel (360) 566-9243 • Fax (503) 575-2763